IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PAMELA R. SMILEY, | : | Case No. 3:11-cv-413 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THE CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and §1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Pamela Smiley ("Plaintiff") not "disabled" within the meaning of the Social Security Act and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 12), Plaintiff's Reply (doc. 13), the administrative record (doc. 6),[2] and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff filed applications for DIB and SSI in February 2008, asserting that she has been under a "disability" since February 1, 2007.  PageID 221-32.  Plaintiff claims she is disabled due to diabetic neuropathy, insulin resistance, Graves' disease, depression, and bladder problems.  PageID 221, 225, 263.

Following initial administrative denials of her application, an administrative hearing was conducted before ALJ Amelia Lombardo on March 3, 2011.  PageID 87-119.  On June 9, 2011, ALJ Lombardo issued a written decision, concluding that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act.   PageID 64-76.

Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since February 1, 2007, the alleged onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: (1) fibromyalgia (20 CFR §§ 404.1520(c) and 416.920 (c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform the full range of medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c).

6. The claimant is capable of performing past relevant work as a purchasing agent, home health aide, telephone order clerk, photography sales

      representative, and musician. This work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 CFR §§ 404.1565 and 416.965).

   7.   The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2007, through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

PageID 66-76.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 56-58; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on November 23, 2011. Doc. 2.

### B. Plaintiff's Hearing Testimony

At the administrative hearing, Plaintiff testified that she is 5'6" tall, and weighs 140 pounds. PageID 90. She had previously weighed 280 pounds, but lost 140 pounds as a result of gastric bypass surgery in June 2009. *Id*.

Plaintiff testified that she had a very active lifestyle prior to developing severe fibromyalgia. PageID 96. At one time, she was a street musician in New Orleans, and had a job managing a $7 million budget as a purchasing agent for a Mardi Gras company. PageID 94-95. However, she now experiences pain all over her body, is severely depressed, and has difficulty maintaining concentration. PageID 96. She described the onset of fibromyalgia as if she "ran into a brick wall." *Id*. In addition to the pain, Plaintiff testified that her "mind just goes into a fog," and even though she's an educated person, "there are days [she] can't put a good sentence together." PageID 96-97. She states that holding conversations with people is "almost impossible anymore," and her limitations have impacted her so greatly that she often is unable to

leave her house. PageID 97. She has hepatitis C, which allegedly causes her significant fatigue. PageID 106.

Plaintiff testified that she is currently in physical therapy, and was ordered by her doctor to participate in water aerobics. *Id*. However, because of the fibromyalgia, she is unable to leave the house to do either of those activities during parts of the winter and summer as her body is unable to tolerate hot or cold weather. *Id*.

Plaintiff estimated that she can walk approximately thirty to sixty minutes. PageID 100. She generally uses a cane, and had one with her at the hearing. *Id*. When she goes shopping, she generally uses an electric cart. *Id*. When she sits or stands, she experiences cramping and burning pain in her back, shoulders, and legs. *Id*. She has trouble holding the phone while talking. *Id*. Plaintiff estimates she can only lift five to ten pounds. *Id*.

Plaintiff is able to do household chores, but even simple tasks -- such as cleaning her pet bird's cage or vacuuming -- can take all day. PageID 101. She testified that she rarely drives because of her pain and inability to maintain concentration. PageID 91. She has friends, but lives alone in a first-floor apartment. *Id*. Her boyfriend helps her do laundry and cooks for her. PageID 101-03. Plaintiff acknowledged her past use of marijuana, but claims she hasn't used it since 2005. PageID 99.

When asked why, even with her alleged impairments, she cannot perform as a musician, Plaintiff responded that the pain she experiences all over her body is so severe that she cannot even play her guitar:

> It hurts. All the muscles that I used to play and hold a 12-string guitar, I can't do it. The burning and the sensations and the needles and the pain, I don't have the grip. I can't hold the keys. I can't strum. I can't stand. I was an entertainer that would spend four hours on stage, at any one given night, playing. And I can't sit down on the couch and get through a full song anymore.

***

> Tears come to my eyes. I think about things and I look around my house and I see all my I see my guitars and my best friend, I can't even play my best friend anymore. I played for 40 years. I played with Bo Diddley. And I can't play a song, and that was my life and my heart.

PageID 107-08.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on appeal is to determine: (1) whether the ALJ's non-disability finding is supported by substantial evidence; and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3)[3]; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found a claimant disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."

---

[3]The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

*Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB and/or SSI benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in her Statement of Errors and the administrative decision, *see* doc. 8 at PageID 1219-28; PageID 66-75, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff asserts two assignments of error. Doc. 8 at PageID 1229-37. First, Plaintiff argues that the ALJ's RFC finding -- that she could perform medium exertional work -- is not based upon substantial evidence. Second, Plaintiff argues that the ALJ failed at Step Two by finding no "severe" mental impairments. For the reasons that follow, the Court finds Plaintiff's first assignment of error to be meritorious, and reversal warranted.

#### A. The ALJ's Finding -- That Plaintiff is Capable of Performing Work at the Medium Exertional Level -- is Unsupported by Substantial Evidence.

At Step Four of the sequential process, the ALJ evaluated Plaintiff's RFC. The ALJ then concluded that Plaintiff could perform the full range of medium work[4] as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). PageID 72. The ALJ's RFC finding, however, is not based upon any medical opinion of record.

For instance, Rodney Stone, M.D., a Board Certified internist and one of Plaintiff's treating physicians, opined in March and May 2008 that Plaintiff was unable to work and disabled due to a combination of her fibromyalgia and mental disorders. PageID 482-86. Dr. Stone reported constant swelling and chronic pain in Plaintiff's left leg, and stated, "[s]he is just functionally unable to do things." PageID 483. He further reported that when Plaintiff is able to

---

[4]"Medium" work, as defined by 20 C.F.R. §§ 404.1567 and 416.967 , involves the occasional lifting of 50 pounds at a time, and frequent lifting or carrying of objects weighing up to 25 pounds. Medium work can require standing and walking as much as six hours during any given eight-hour workday. *Id*. It may also involve frequent stooping, grasping, holding, and

perform an activity, "the next 2-3 days she is able to do nothing. She just has to sit around and rest up from it." *Id*. Dr. Stone acknowledged that even though he is not a psychiatrist, he nonetheless recognizes Plaintiff has serious mental impairments in addition to her physical impairments. *Id*.

Likewise, in November 2009, Caner Sakin, M.D., a treating rheumatology fellow at The Ohio State University Medical Center, reported Plaintiff has more than 11 out of 18 fibromyalgia tender points upon examination. PageID 1075-76. Dr. Sakin's lab studies revealed Plaintiff to have a rheumatoid factor above the normal rate.[5] At that time, he opined Plaintiff symptoms -- which included diffuse aches and pains throughout her body -- to be secondary to fibromyalgia. *Id*. In February 2010, Dr. Sakin opined that, "[a]t this point, the patient's fibromyalgia symptoms do appear to be somewhat worsening." PageID 1016.

Moreover, the 840-plus pages of medical records before the Court are replete with treatment notes and examination reports that Plaintiff has numerous signs of fibromyalgia including, among others, flat reflexes, poor strength, edema of her legs, crepitus in her joints (especially her knees), erythema of her knees, positive tender points, decreased sensation of her lower extremities, and various reports of reduced range of motion. PageID 403, 405, 407, 432, 503, 782, 784, 1007, 1012, 1015, 1061, 1076. For instance, during her initial evaluation for physical therapy in November 2009, Plaintiff was observed to have "[d]ecreased walking speed, decreased trunk rotation, flexed posture, decreased knee flexion in swing, decreased hip extension in stance, [and an] antalgic gait." PageID 981. She also had a decreased range of

---

turning objects. *Id*.

[5] A rheumatoid factor test is a blood test that measures the presence and level of rheumatoid factor, an indicator of rheumatoid arthritis as well as other autoimmune and infectious diseases. *See Dorland's Illustrated Medical Dictionary* 649 (19th ed. 2000) and *Stedman's Medical Dictionary* 645 (27th ed. 2000).

motion of her cervical spine, shoulders, trunk and hips; as well as decreased strength in upper and lower extremities. *Id.* Furthermore, in April 2010, she had a decreased range of motion in her shoulders as well as decreased strength in strength of her upper and lower extremities. PageID 973. Similarly, in September 2010, Plaintiff was reported to have muscle spasms, decreased range of motion, and diminished strength on exam. PageID 1201-02. She likewise had a decreased range of motion, decreased lower extremity strength, and a walking tolerance of just five minutes in November 2010. PageID 1200. The record also includes reports suggesting serious issues with Plaintiff's left knee. *See*, *e.g.*, PageID 1059, 1207-08, 1233.

In addition, the two non-examining state agency reviewers both found that Plaintiff was unable to perform medium work activity. Gary Hinzman, M.D., reviewed the record on behalf of the state agency in July 2008, but never examined Plaintiff. PageID 554-61. In his physical RFC assessment, Dr. Hinzman opined that Plaintiff could occasionally lift/carry up to twenty pounds and frequently lift/carry up to ten pounds -- which is significantly less than the lifting requirements necessary to perform work at the medium exertional level. PageID 555; *cf.* 20 C.F.R. §§ 404.1567 and 416.967 (defining "light" work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requir[ing] a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls"). Dr. Hinzman also opined that Plaintiff could stand/walk for six hours and sit for six hours, but that she should never climb ladders, ropes, and/or scaffolds. PageID 556. On December 3, 2008, Gerald Klyop, M.D., another non-examining state agency physician, affirmed Dr. Hinzman's assessment. PageID 722.

Nevertheless, the ALJ rejected the RFC assessments of Drs. Hinzman and Klyop, the reports by treating physicians Stone and Sakin, and Plaintiff's physical therapy treatment

records. The ALJ found the state agency doctors' opinion -- that Plaintiff would be "limit[ed] to light work [--] to be too pessimistic when considering the entire radiological and clinical evidence of record." PageID 69. The ALJ also stated that, "[t]here is no substantial evidence to show that the claimant is unable to lift as much as 50 pounds occasionally and 25 pounds frequently." PageID 72. Finally, the ALJ found Plaintiff's subjective complaints to be not entirely credible, including her testimony that she could lift just five or ten pounds. PageID 72. Based on the above RFC and the testimony of Vocational Expert William Braunig, the ALJ concluded, without more, that Plaintiff could perform her past relevant work as a purchasing agent, home health aide, receptionist, photography sales representative, and musician. PageID 75-76.

The ALJ must consider, and weigh, all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(c). Certain types of opinions, however, are normally entitled to greater weight. *See id.* For example, an ALJ must give the opinions of a treating physician controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in [the claimant's] case record…." 20 C.F.R. § 404.1527(c)(2). Even assuming that a treating physician opinion is not entitled to controlling weight, an ALJ must still consider the amount of weight that is appropriate by applying the relevant factors. *Id*. Furthermore, an ALJ must "always give good reasons in [his or her] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

Importantly, in weighing the medical evidence, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 U.S. App. LEXIS 19206, at *36-37 (6th Cir. Aug. 27,

2009). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09cv564, 2011 U.S. Dist. LEXIS 11925, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings"). In other terms, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, No. 1:10-cv-398, 2011 U.S. Dist. LEXIS 90029, at *14 (S.D. Ohio June 9, 2011).

The Court recognizes that the ALJ reserves the right to decide certain issues, such as a claimant's RFC. 20 C.F.R. § 404.1527(d). Nevertheless, in assessing a claimant's RFC, the ALJ must consider all relevant evidence of record, including medical source opinions discussing the severity of a claimant's impairments. See 20 C.F.R. §§ 404.1527(d), 404.1545(a). Furthermore, this Court has stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Comm'r of Soc. Sec.*, No. 1:08-CV-00828, 2009 U.S. Dist. LEXIS 102429, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms'") (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)); *Mabra v. Comm'r of Soc. Sec.*, No. 2:11-cv-407, 2012 U.S. Dist. LEXIS 84504, at *20-34 (S.D. Ohio June 19, 2012). *See also Nguyen v.*

*Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [ALJ's RFC] determination").

Here, the ALJ found Plaintiff retained the RFC to perform a full range of medium work. The record in this case, however, does not contain a single opinion from any medical source that indicates Plaintiff is functionally capable of performing medium work -- let alone at a full range and with no restrictions whatsoever. As outlined above, the record in this case contradicts such a finding, as the RFC adopted by the ALJ fails to adequately account for the objective medical evidence. In reaching her RFC determination, the ALJ discounted all treating and state agency physician medical opinions, as well as numerous reports regarding the severity of Plaintiff's impairments, by relying on her own lay interpretation. Tellingly, the ALJ did not credit *any* medical opinion evidence in reaching her RFC assessment. Rather, the ALJ based her RFC assessment on her own medical conclusion that the entirety of the medical evidence of record would justify Plaintiff performing medium work.

The Court recognizes there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source. *See Deskin*, 605 F. Supp. 2d at 912 ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment"). This, however, is not such a case. The ALJ impermissibly relied on her own interpretation of the medical data of record, ignored countless reports regarding the severity of Plaintiff's impairments as well as the limitations caused by those impairments, and improperly substituted her interpretation in place of the opinions of treating and state agency

physicians. Under these circumstances, the ALJ's RFC determination lacks any support whatsoever. Because the ALJ improperly relied on this determination to conclude that Plaintiff can perform medium work and her past work, remand is necessary. *See Mabra*, 2012 U.S. Dist. LEXIS 84504, at *30-34.

### B. The Court Finds Plaintiff's Second Assignment of Error to be Without Merit.

The Court has thoroughly examined and considered Plaintiff's other assignment of error, but finds it to be unpersuasive. The Court notes that an ALJ does not commit reversible error in finding an impairment not to be "severe" at Step Two the disability analysis where the ALJ determines the claimant has at least one other severe impairment, and then continues with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Because the ALJ found that Plaintiff had a severe mental impairment and proceeded thereafter to additional steps, no reversible error was committed at Step Two of the sequential evaluation. *Id*. Rather, as discussed above, the basis for reversal in this case is the ALJ's inappropriate formulation of Plaintiff's RFC without reference to the medical evidence of record, and the ALJ's improper substitution of her own interpretation in place of the opinions of the treating and state agency physicians. Accordingly, the case must be remanded for further analysis and reconsideration.

### IV. RECOMMENDATION

For the foregoing reasons, the Court finds that, as more fully explained above, the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed and remanded to the Commissioner of Social Security under the Fourth Sentence of 42 U.S.C. § 405(g). *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 173-76 (6th Cir.1994).

-14-

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED;**

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

January 11, 2013 **s/Michael J. Newman**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).